**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Ely Gemborys, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>Cenlar Agency, Inc.,<br><br>Defendant. | Civil Action No.: 4:20-cv-40006-TSH |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (1) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND (2) AN INCENTIVE AWARD TO THE NAMED PLAINTIFF**

Plaintiff Ely Gemborys ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses and an Incentive Award to the Named Plaintiff.

Pursuant to Fed. R. Civ. P. 23(h), Plaintiff and Class Counsel respectfully move this Court for an Order of attorneys' fees of $140,875.00 (23% of the $612,500.00 Settlement Fund[1]), costs of $3,773.59 and for an incentive award to the Class Representative in the amount of $10,000.[2] Plaintiff and Class Counsel have efficiently and successfully litigated this case which sought relief under Mass. Gen. Laws ch. 93A for violations of 940 Code Mass. Regs. § 7.04(1)(f) (2012) (the "Regulation") which prohibits creditors from "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in

[1] Capitalized terms used herein have the same meaning that they have in the Class Action Settlement Agreement.

[2] At Preliminary Approval, and in the class notice, Plaintiff advised he would seek up to 1/3 of the common fund in Class Counsel fees and costs. Plaintiff is making a fee request of 23% of the fund, the same percentage awarded by this Court in *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1 (D. Mass. 2020) where undersigned counsel represented the settlement class.

each seven-day period." Not a penny of the fund reverts back to Defendant Cenlar Agency, Inc. ("Cenlar Agency"), and Cenlar FSB (collectively, Cenlar Agency and Cenlar FSB are referred to herein as "Cenlar"). But for the efforts of Class Counsel and the Plaintiff, the Class would receive nothing, and the alleged violations of Massachusetts law would go unremedied. Their efforts included written discovery and discovery by deposition regarding Plaintiff and class member claims in chief, the prerequisites of class certification and Defendant's defenses to merits and class certification.

Their efforts also included a settlement conference before the Honorable Magistrate Judge David H. Hennessy. That settlement conference was preceded by detailed mediation briefs outlining the strengths and weaknesses of the Parties' positions. The discussions were adversarial but resulted in an agreed set of terms to govern a class-wide settlement subject to additional discovery on the class size and Cenlar's class data.

On January 20, 2021, the Court granted preliminary approval of the Parties' class action settlement agreement and scheduled the Final Approval Hearing for June 23, 2021. Because of the efforts of Class Counsel and the Class Representative, the Settlement Class Members can participate in this excellent result and recover a significant amount in settlement owing to allegedly unlawful debt collection calls.

For the reasons stated herein, Class Counsel and Plaintiff respectfully request that the Court approve the incentive and attorneys' fees and expenses awards.

## ARGUMENT

### I. CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES FOR THEIR SERVICE TO THE CLASS UNDER THE PERCENTAGE-OF-RECOVERY METHOD

Where a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec.*

*Auto-Lite Co.*, 396 U.S. 375, 392 (1970). Fed. R. Civ. P. 23 further states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Likewise, Chapter 93A provides for attorneys' fees and costs. *See* M.G.L. c. 93A § 9(4).

"In the First Circuit, the percentage of fund methodology, where a percentage of the settlement is deducted from the common settlement fund and used to compensate the attorneys for their efforts, is favored and appropriate in common fund cases." *Carlson*, 447 F. Supp. at 3 (*citing In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)); *see also Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85–89 (D. Mass. 2005); *In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method."). "However, district courts may also calculate a fee award using either percentage of fund methodology or a lodestar when determining fee awards." *Id.* "Regardless of the method used to calculate a fee award, the touchstone of the analysis is reasonableness. *Carlson*, 447 F. Supp at 3-4 (*citing In re Fidelity/Micron Sec. Litig. v. Fidelity Magellan Fund*, 167 F.3d 735, 738 (1st Cir. 1999).

In weighing an appropriate attorney fee award under a common fund request, the First Circuit has not set forth a fixed set of factors, however, courts generally consider the *Goldberger* factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (*citing In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass.

Aug. 17, 2005), *citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 255–56 (1985)).

## II. THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE AWARD

Consideration of the *Goldberger* factors weigh strongly in favor of approving the requested fees and expenses.

### A. THE SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED SUPPORTS THE FEE REQEST

The fund of $612,500.00 resolves approximately 11,699 potential claims for violations of the Regulation and Chapter 93A owing to Cenlar's alleged practice of calling consumers more than two times in a seven-day period. Without a showing of actual provable damages owing to excess phone calls, class members would be entitled to $25 dollars for their claims with recovery for up to $50 to $75 dollars if Plaintiff established the violations were "willful or knowing." Mass. Gen. Laws ch. 93A, § 9(3). Whether someone may recover $25 for each violation of the collection Regulation is a question which has not been decided by Massachusetts courts. In other contexts, statutory damages for claims under Chapter 93A are per claim rather than each unfair or deceptive occurrence. *See Aspinall v. Philip Morris Companies, Inc.*, 2013 WL 7863290, at *9 (Mass. Super. Feb. 7, 2013) (the $25 in damages is per claim and not per sale of each misleading cigarette packaging). The $612,500.00 fund here represents, in total, approximately $52.35 per each class member, about double the statutory recovery under Chapter 93A. Thus, the total fund obtained represents an excellent result for the class.

Further, the actual recovery to class members will be higher. To recover from the fund, Settlement Class Members must submit claims. The claims process is ongoing and while every member can easily submit claims online or by mail, it is not expected that all or near all will do so. Thus, because the fund is to be distributed pro-rata with no portion reverting to Cenlar, each claiming

member will recover more than $52. That figure will be known by the Final Approval Hearing but Plaintiff submits that even recovery above double the statutory minimum is an excellent result.

Finally, the structure of the settlement here merits the fee. There is no reverter. There is no cap on class member recovery which can obfuscate the size of the fund created. *See, e.g.*, *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *12 (D. Mass. Sept. 30, 2016). The net fund will all be distributed to class members, with a second distribution if feasible, or go to a *cy pres* recipient.

**B. THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED**

The skill and efficiency of the attorneys involved also weighs in favor of the requested fees and expenses. Class Counsel are experienced and skilled consumer protection and class action litigators. (Declaration of Sergei Lemberg ("Lemberg Decl.") ¶¶ 4-8; Declaration of Stephen Taylor ("Taylor Decl.") ¶¶ 4-5). They have successfully represented classes in both contested and settled proceedings. *See, e.g., Carlson v. Target Enter., Inc.*, 2020 WL 1332839 (D. Mass. Mar. 23, 2020) (final approval of class action settlement for alleged violations of Chapter 93A and 940 C.M.R. § 7.04(1)(f)); *Oberther v. Midland Credit Management*, Doc. No. 90, 14-cv-30014 (D. Mass. July 13, 2016) (Fair Debt Collection Practice Act ("FDCPA") class action settlement); *Johnson v. Comodo Grp., Inc.*, 2020 WL 525898, at *1 (D.N.J. Jan. 31, 2020) (contested class certification decision in TCPA action); *Brown v. Rita's Water Ice Franchise Co. LLC*, 2017 WL 1021025, at *1 (E.D. Pa. Mar. 16, 2017) (final approval of class settlement of $3MM common fund in TCPA action); *Duchene v. Westlake Servs., LLC*, 2016 WL 6916734 (W.D. Pa. July 14, 2016) (final approval of class settlement in TCPA action); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying auto fraud class action); *Zimmerman v. Portfolio Recovery Assoc., LLC*, 276 F.R.D. 174 (S.D.N.Y. 2011) (certifying FDCPA class action).

Expert knowledge of these types of cases (the law, the discovery needed, rebutting the arguments both factual and legal offered by defendants to this types of claims) leads to efficient

litigation to the benefit of the class. Instead of a case that dragged on for several years, Class Counsel here was able to settle the case on excellent terms thus supporting the fee request here.

### C. THE COMPLEXITY AND DURATION OF THE LITIGATION

As an initial matter, in *Carlson*, this Court placed emphasis on the stage of the litigation in assessing the fee. The Court noted that a higher percentage, in the 1/3 range, was sometimes reserved for cases that had progressed to trial or the eve of trial. *Carslon*, 447 F. Supp. 3d at 4. While this Court in *Carlson* considered the stage of proceedings as one of several factors, Plaintiff respectfully submits the stage of proceedings consideration should be balanced against the need to justly reward skilled counsel for efficiently litigating a case and to not incentivize wasteful litigation. Provided the settlement is on good terms, which this settlement is, skilled practitioners should not be penalized at the fee stage for reaching resolution expeditiously where less experienced, or less mindful, counsel may need or use protracted proceedings to reach a similar result.

Here, the complexity and duration of the litigation justify the same 23% awarded in *Carlson*. The claims in this action involved complicated issues concerning Defendant's business practices, business records and review of detailed class call data. The claims also involved complicated issues of law, including how damages can be calculated and whether Defendant's violations of the Massachusetts Debt Collection Regulations fell within certain exceptions to liability and whether Defendant's violations could be shown on a class-wide basis. Further, after the pleadings were joined, Plaintiff took and obtained discovery regarding Defendant's practices regarding the Plaintiff himself, the Settlement Class, and Defendant's defenses. (Lemberg Decl. ¶ 10(3)-(5))). Plaintiff obtained additional sworn testimony on the class size and composition. (Lemberg Decl. ¶ 10(8)). The complexity of these issues supports the requested award.

### D. THE RISKS OF THE LITIGATION

The risks of litigation support the requested award. For any firm to bring a class action against a substantial company like Cenlar requires commitment of time and resources in the face of significant risks of loss and/or delay. In this case, Class Counsel is comprised of one small firm. Firms of small size face even greater risks in litigating large class actions with no guarantee of payment. *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (finding heightened risk of small firm representation should be rewarded with larger percentage fee for good result); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 750 (1987) (Delaware Valley II) (plurality opinion) ("[C]ontingent litigation may pose greater risks to a small firm or a solo practitioner because the risk of nonpayment may not be offset so easily by the presence of paying work. . . ."); *Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 382 (6th Cir. 1993) ("[T]he maintenance of comparatively large pieces of litigation prevents small firms from diversifying risk by taking on additional clients.").

This is a pure contingent fee case, which Class Counsel took on with risk concerning not only the result of the case, but also how much time and money would need to be invested to get a result against a well-funded defendant who is well able to devote the resources necessary to litigate these types of cases. Had the case been lost, they would have received no compensation whatsoever for their significant investment of time and effort. Accordingly, this factor also weighs in favor of the requested award.

### E. THE AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFF'S COUNSEL

Class Counsel have invested significant time and effort in this action. Class Counsel (1) investigated Mr. Gemborys' claims, the business of Cenlar and its collection activities in the Commonwealth; (2) drafted and filed Plaintiff's class action complaint in Worcester Superior Court

alleging Cenlar had a practice and policy of placing more than two calls in a seven-day period to Plaintiff and a class in violation of Massachusetts law; (3) engaged in discovery through Rule 33 & 34 requests regarding Plaintiff's claims in chief and the prerequisites of class certification under Fed. R. Civ. P. 23; (4) met and conferred with Defendant regarding its discovery responses; (5) consulted with a data specialist to examine the 135,000 lines of data produced by Defendant detailing the calls placed to Massachusetts borrowers during the Class Period; (6) participated in a full day settlement and submitted detailed mediation briefs to Judge Hennessey; (7) deposed a corporate representative concerning the class size, composition and the class data; (8) negotiated and drafted a comprehensive Settlement Agreement; (9) prepared a motion for preliminary approval of the Settlement; (10) regularly communicated with the Settlement Administrator to ensure a smooth notice and claims process following the Court's preliminary approval order; (11) reviewed the language and content of the settlement website; and (12) communicated with the named Plaintiff throughout the case. (Declaration of Sergei Lemberg ¶ 10).

In addition, Class Counsel will devote further time and effort appearing at the final approval hearing, responding to inquiries from Class Members going forward, addressing any objections that could arise and monitoring the distribution of settlement payments by the Settlement Administrator. (Lemberg Decl. ¶ 11).

These combined efforts, taken with the risk of no recovery to counsel whatsoever, support the requested award in this case, and demonstrate that the fees and expenses requested here have been well-earned.

### F. AWARDS IN SIMILAR CASES

Awards in similar cases support the requested fee. While Class Counsel is seeking the same percentage awarded in *Carlson*, the actual award is far less because the class and the fund in *Carlson* were larger. The class in Carlson had approximately 43,579 members and a fund of $2,275,000.00.

This resulted in a fee award of $523,250.00. Here, there are approximately 11,699 members, the fund is $612,500.00, and a 23% fee equals $140,875.00. The "magnitude" of the fee at issue, both requested and rewarded, was a concern for the Court in *Carlson*, 447 F. Supp. 3d at 5. Plaintiff respectfully submits that the amounts at issue here do not raise the same concerns and easily justify a fee of $140,875.00 or 23%.

In addition, the fee requested in percentage terms is lower than awards in other class action cases involving similar consumer protections statutes, including the Telephone Consumer Protection Act, which like the Massachusetts Debt Collection Regulations, seeks to protect consumers from harassing phone calls. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880 (3d Cir. 2016) (affirming award of one-third of a reversionary settlement fund in TCPA class action); *Vandervort v Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (fee of one-third awarded in TCPA case); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Hageman v. AT & T Mobility LLC*, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount.").

The fee and expense request here is in-line with or below awards in similar cases. Thus, this factor weighs in support of the requested award.

**G. PUBLIC POLICY CONSIDERATIONS**

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent" *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Here, given the risk and expense in pursuing class members' Chapter 93A claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *Id.*

Moreover, the Massachusetts legislature encourages litigants to pursue Chapter 93A claims like these via class actions. *See* M.G.L. c. 93A § 9(2) ("Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated person"). Chapter 93A is a broad consumer protection statute which "encompasses claims where a plaintiff's damages are de minimis" *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 60 n.14 (2002); *see also Murphy v. Charlestown Sav. Bank*, 380 Mass. 738, 743, 405 N.E.2d 954, 957 (1980) ("G.L. c. 93A deserves broad construction."). And the regulation at issue here – the Massachusetts Debt Collection Regulations – was enacted to "prevent[ ] creditors from harassing, oppressing, or abusing debtors." *Armata v. Target Corp.*, 480 Mass. 14, 15, 99 N.E.3d 788, 790 (2018); *see also Watkins v. Glenn Assocs., Inc.*, 2016 WL 3224784, at *2 (Mass. Super. June 10, 2016) ("Taken as a whole, the Guidance and the state regulation evidence a clear intent by the Attorney General to limit the pressure that debt collectors may exert upon a person who simply owes a debt, to prevent a creditor from intruding upon a debtor's personal life, and to protect them from harassment, oppression, and abuse."). Thus, this class action serves important public policy of ensuring that consumers' rights be protected even where individual damages are

minimal. So too, the requested fee here serves an important public policy of ensuring that consumer claims under the Regulation and Chapter 93A can be pursued by experienced and competent counsel.

**H. A LODESTAR CROSS-CHECK SUPPORTS THE REQUESTED AWARD**

The requested attorneys' fees and expenses are reasonable under the lodestar method. "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005). Nonetheless, courts often consider the lodestar when determining the reasonableness of a fee calculated as a percentage of the fund. *See id.* In addition, multipliers of lodestar amounts is "an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (collecting cases).

Class Counsel's lodestar in this action is $129,975 which is based on 231 attorney and professional staff hours. (Lemberg Decl. ¶ 12):

| Professional | Rate | Hours | Lodestar |
|---|---|---|---|
| Sergei Lemberg, Esq. | $650 | 107 | $73,450 |
| Stephen Taylor, Esq. | $600 | 78 | $56,100 |
| Josh Markovits, Esq. | $350 | 35 | $14,350 |
| Paralegal Time | $125 | 11 | $1,125 |
| | | 231 | $129,975 |

These rates are fully supported by the skill and experience of Plaintiff's counsel and well within the market rate for their services. (Lemberg Decl. ¶ 15; Taylor Decl. ¶¶ 2-7). The lodestar does not include additional work associated with final approval and Class Counsel's oversight of the settlement administration process. (Lemberg Decl. ¶ 11).

Based on the lodestar to date, the lodestar crosscheck results in a multiplier of 1.08. This small multiplier is well within the range of what other Courts have approved. *See Roberts*, 2016 WL 8677312, at *13 (court approved a multiplier of 1.96); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (court approved lodestar multiplier of about 8.3); *In re AMICAS, Inc. S'holder Litig.*, 2010 WL 5557444, at *4 (Mass. Super. Dec. 6, 2010), *judgment entered sub nom. In re Amicas, Inc. S'holder Litig.* (Mass. Super. 2010) (court approved lodestar multiplier of 5).

Accordingly, the lodestar cross-check demonstrates that a fee of 23% of the common fund here is fair and reasonable and reasonable compensation to Class Counsel for their efforts on achieving an excellent result for the Settlement Class.

## III. THE COSTS OF $3,773.59 ARE REASONABLE

Recovery of these costs is authorized by Fed. R. Civ. P. 23(h). Class Counsel's expenses total $3,773.59. (Lemberg Decl. ¶ 17). These expenses consist of consultant costs, court filing fees, process fees, and a court reporter fee. *Id.* ¶ 18. These costs were incurred on behalf of the Settlement Class, were necessary to prosecute this action and should be awarded to Class Counsel.

## IV. THE COURT SHOULD APPROVE INCENTIVE AWARDS TO ELYS GEMBORYS FOR HIS EFFORTS ON BEHALF OF THE CLASS

Class Counsel requests that the Court approve the payment of an incentive award for named Plaintiff in the amount of $10,000.00.

An incentive award for bringing and litigating this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litigation*, § 21.62 n.971 (4th ed. 2004); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005). Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they

incurred during the course of the class action litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005).

Mr. Gemborys has been an excellent class representative. He has been regularly in contact with his counsel and aided their investigation throughout the case. (Lemberg Decl. ¶ 9). He was in attendance at the Parties' settlement conference before Judge Hennessey. *Id*. Though he was excused early from "live" participation in the zoom proceeding, he remained available throughout the day. *Id.* An incentive award of $10,000 to Mr. Gemborys is reasonable and fair and within the range of awards approved in other class actions. *See, e.g.*, *Carlson*, 2020 WL 1332839, at *3 (approving an incentive award of $7,500 to named plaintiff); *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (approving award of $20,000 to each named plaintiff); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving $10,000.00 incentive award and collecting cases).

## CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court grant this motion and (1) award attorneys' fees and expenses to Class Counsel in the amount of $144,648.59 and (2) award $10,000 as an incentive award to the Plaintiff for his role in representing the class.

Respectfully Submitted,

Dated: March 19, 2021

*/s/ Stephen Taylor*
Sergei Lemberg
Stephen Taylor
Lemberg Law, LLC
43 Danbury Road

Wilton, CT 06897
Tel: (203) 653-2250
Fax: (203) 653-3424

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2021, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system which sent notice of such filing to all counsel of record.

/s/ Stephen Taylor
Stephen Taylor